2005-NMCA-087

115 P.3d 816

**Anthony ABEYTA, Worker–Appellee,**

v.

**BUMPER TO BUMPER AUTO SALVAGE and CNA Insurance Company, Employer/Insurer–Appellants.**

No. 24,938.

Court of Appeals of New Mexico.

June 2, 2005.

John R. Westerman, Law Offices of John R. Westerman, Chartered, Farmington, NM, for Appellee.

Richard M. Padilla, Hatch, Allen & Shepherd, P.A., Albuquerque, NM, for Appellants.

## OPINION

PICKARD, Judge.

{1} Employer appeals from an order of the worker's compensation judge (WCJ), which ordered Employer to pay 100% of Worker's attorney fees. The WCJ ordered Employer to pay 100% of Worker's attorney fees because the final compensation order that was awarded to Worker was worth a greater amount than Worker's initial offer for compensation. On appeal, Employer argues that the WCJ erred in awarding Worker 100% of his attorney fees because (1) Worker's initial offer was "ambiguous," (2) Worker failed to show that his offer was less than the amount awarded in the final compensation order, and (3) the circumstances of this case, including that Worker's attorney spent minimal time during the final settlement negotiations, are such that as a matter of law Worker should not have been awarded 100% of his attorney fees. We conclude that Worker's offer for compensation was not ambiguous. We also conclude that Worker's offer was less than the amount awarded in the final compensation order, which permitted the WCJ to award Worker 100% of Worker's attorney fees to be paid by Employer. Finally, we conclude that the WCJ did not abuse its discretion in awarding Worker 100% of his attorney fees to be paid by Employer. Accordingly, we affirm the decision of the WCJ.

## FACTS AND BACKGROUND

{2} On January 6, 2000, Worker injured his back in the course and scope of his employment. After the injury to his back, Worker began to see Employer's health care provider, Dr. Frederick Mosley. In October 2000, Worker elected to change his health care provider and began to see Dr. Erich Marchand, although he continued to be evaluated periodically by Dr. Mosley. Worker began to receive temporary total disability (TTD) benefits from the date of his injury. However, both Worker and Employer continued to negotiate a final settlement regarding the actual TTD rate that Worker was owed and the amount of medical benefits to be paid to Worker.

{3} In March 2003, Worker submitted an offer to allow a compensation order to be taken. The offer included a TTD rate of $260 per week and a provision stating that Worker would not assert any claim for payment of medical bills for treatments Worker received in late 2002. The offer also included the following provision:

2. TTD benefits paid for the time period from the date of injury until . . . [maxi-

mum medical improvement (MMI) ] as determined by Dr. Marchand.

{4} Employer rejected the offer because it claimed that paragraph two of the offer was too ambiguous. Subsequently, Employer submitted a counteroffer. Employer's counteroffer also included the TTD rate of $260 per week, which was the rate specified in Worker's offer. However, Employer's counteroffer differed from Worker's offer in two areas. First, Employer agreed in its counteroffer to pay for Worker's medical bills that Worker incurred in late 2002. Second, unlike Worker's offer, which specified that Dr. Marchand would determine Worker's MMI date, Employer's counteroffer did not provide for a specific doctor to set the MMI date, although it did provide that TTD would be paid until the MMI date.

{5} After Employer submitted its counteroffer, Employer and Worker continued to have discussions regarding the offers. Worker disputed the TTD rate of $260 per week in Employer's counteroffer. Employer subsequently withdrew its initial counteroffer and submitted a second counteroffer. Employer's second counteroffer included a higher TTD rate of $268.87 per week. On June 19, 2003, the WCJ entered a compensation order based on a stipulation of the parties. The stipulated compensation order stated that Worker accepted Employer's second counteroffer, and the WCJ adopted that offer as its compensation order.

{6} After the WCJ entered the final compensation order, Worker filed an application to the WCJ, in which Worker requested that Employer pay 100% of Worker's attorney fees. Worker based his application for attorney fees on NMSA 1978, § 52-1-54(F)(4) (2003), which reads as follows:

F. After a recommended resolution has been issued and rejected, ... the ... claimant may serve upon the opposing party an offer to allow a compensation order to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued, subject to the following:

...

(4) if the worker's offer was less than the amount awarded by the compensation order, the employer shall pay one hundred percent of the attorney fees to be paid the worker's attorney, and the worker shall be relieved from any responsibility for paying any portion of the worker's attorney fees.

Worker's application claimed that the final compensation order exceeded Worker's offer and, therefore, pursuant to Section 52-1-54(F)(4) he was entitled to have Employer pay 100% of his attorney fees. In its response to Worker's application, Employer argued that Worker's offer was too ambiguous to constitute an offer under Section 52-1-54(F)(4). Furthermore, Employer asserted that the final compensation order did not exceed Worker's offer because the final order did not allow Worker to determine the health care provider who would determine Worker's MMI date.

{7} The WCJ, after hearing oral arguments regarding Worker's application, found that Worker's offer was not so ambiguous as to render the offer unenforceable. Furthermore, the WCJ also found that the final compensation order exceeded Worker's offer by awarding Worker a higher TTD rate, as well as providing that Employer would pay Worker's medical bills incurred in late 2002. Thus, the WCJ granted Worker's application and entered an order directing Employer to pay 100% of Worker's attorney fees. Employer filed a motion to have the WCJ reconsider this order. After hearing arguments regarding Employer's motion for reconsideration, the WCJ denied the motion. In the order granting Worker 100% of his attorney fees and denying Employer's motion for reconsideration, the WCJ provided that Employer and Worker had stipulated that a reasonable attorney fee in this case was $11,750.

## DISCUSSION

{8} We begin our analysis of this case by addressing Employer's contention that Worker's offer was so ambiguous as to render the offer invalid. We then proceed to analyze Employer's contention that the final compensation order did not exceed Worker's offer. We conclude with a short discussion concerning whether the fee shifting provision of Section 52-1-54(F)(4) should apply in this

case even though Employer worked diligently toward reaching a settlement with Worker.

**Worker's Offer to Allow a Compensation Order to Be Taken Was Not Ambiguous**

{9} Employer argues that it should not be responsible for 100% of Worker's attorney fees because Worker's offer to allow a compensation order to be taken was invalid due to an ambiguity within the offer. Specifically, Employer argues that paragraph two of Worker's offer was ambiguous because it did not specify the actual date that Worker would reach MMI. Employer argues that an ambiguous offer is not the type of offer contemplated by Section 52-1-54(F)(4) and therefore Employer should not be held to the fee shifting provisions of the statute. We review a WCJ's order awarding attorney fees for an abuse of discretion; however, the review of the application of law to the facts is conducted de novo. *Hise v. City of Albuquerque,* 2003–NMCA–015, ¶ 8, 133 N.M. 133, 61 P.3d 842. Therefore, an abuse of discretion can include a discretionary decision that is premised on a misapplication of the law. *Id.*

{10} Black's Law Dictionary defines "ambiguity" as "[a]n uncertainty of meaning or intention." Black's Law Dictionary 88 (8th ed.2004). Here, paragraph two of Worker's offer clearly set out Worker's intention and meaning. Worker intended Dr. Marchand to have sole control over determining Worker's MMI date and for the date to be set some time in the future. Employer asserts that paragraph two was ambiguous because Worker's MMI date was not specified. Yet, there is no basis for setting an MMI date if the healing process is still continuing. *Hall v. Dade County Sch. Bd.,* 492 So.2d 768, 770 (Fla.Dist.Ct.App.1986). Employer's second counteroffer, which eventually was adopted by the WCJ as the final compensation order, also did not include a specified MMI date. Furthermore, Employer's counteroffer acknowledged that Worker's healing process was continuing by providing that Dr. Marchand should determine Worker's MMI date after Worker completed "his course of prescribed physical therapy of approximately six (6) weeks." Yet, the counteroffer also provided that Worker's MMI date could be determined by a doctor other than Dr. Marchand. We conclude that Worker's offer was clear as to Worker's meaning and intent regarding the issues of the determination of Worker's MMI date and which doctor would determine the date.

{11} Our appellate courts have held that a document is ambiguous if it is susceptible to more than one reasonable interpretation. *Levenson v. Mobley,* 106 N.M. 399, 401, 744 P.2d 174, 176 (1987). However, in this case, the only reasonable interpretation of paragraph two is that Worker offered Employer a settlement based on Dr. Marchand having sole control of determining Worker's MMI date and that Dr. Marchand would determine Worker's MMI date at some time in the future. Although we acknowledge that Worker's offer posed a level of risk for Employer that Employer may not have been willing to take, we conclude that the language of the offer was not susceptible to more than one interpretation and therefore not ambiguous.

{12} Employer relies on *Aguilar v. Peñasco Independent School District No. 6,* 100 N.M. 625, 629, 674 P.2d 515, 519 (1984), as support for the proposition that in a worker's compensation case an ambiguous offer may be found to be invalid. Employer argues that in *Aguilar* the Supreme Court ruled that because of an ambiguity in the employer's offer of settlement, it could not be held that Worker had failed to collect compensation in excess of the amount offered. *Id.* This case, however, is distinguishable from *Aguilar.* In *Aguilar,* the Court held that the employer's offer of settlement was ambiguous, whereas in the present case, we have already determined that Worker's offer was not ambiguous. *Id.* Furthermore, in *Aguilar,* the ambiguity concerned the combining of medical expenses and attorney fees into one lump sum, which led to confusion as to what funds were earmarked for medical expenses as opposed to what funds were set aside for attorney fees. *See id.* In the present case, the language that Employer argues is ambiguous is simply a term of Worker's offer that Worker found most favorable to him and Employer found too risky to undertake.

804

{13} In *Leo v. Cornucopia Restaurant*, 118 N.M. 354, 362, 881 P.2d 714, 722 (Ct.App. 1994), we held that the purpose of Section 52–1–54(F) is to "encourage settlement of compensation cases by authorizing both parties to make offers of judgment, and by providing a financial sanction against a party that rejects an offer of judgment and fails to obtain a more favorable outcome at the formal hearing." We have since held that a compensation order entered pursuant to a settlement can be utilized when evaluating whether an offer of judgment has been met under Section 52–1–54(F). *Hise*, 2003–NMCA–015, ¶¶ 10–11, 133 N.M. 133, 61 P.3d 842. We hold that the purpose of Section 52–1–54(F) would be undercut by a determination that parties cannot enter into settlements where the MMI date is to be determined at a later date due to a worker's continuing healing process. Therefore, we rule that the WCJ did not err when he ruled that Worker's offer for a compensation order to be taken was not ambiguous and that Worker's offer was a valid offer pursuant to Section 52–1–54(F)(4).

**The WCJ Did Not Err When He Determined that the Final Compensation Order Exceeded Worker's Offer for a Compensation Order to Be Taken**

■ {14} Employer argues that the final compensation order did not exceed Worker's offer to allow a compensation order to be taken. Specifically, Employer contends that Worker's offer sought to gain control of which doctor would determine Worker's MMI date and that the final compensation order did not provide Worker with as much control. We agree with Employer that the final compensation order did not give Worker control of choosing the doctor who would determine Worker's MMI date; however, we disagree with Employer that the final compensation order in this case did not exceed Worker's offer. Although Worker gained less control of who would determine his MMI date in the final compensation order, we base our conclusion that the final compensation order exceeded Worker's offer on the provisions in the final order that awarded Worker the cost of medical bills that he incurred in late 2002 and that increased the compensa-

tion rate. Worker's offer did not include a claim for Worker's medical bills from late 2002. Our Supreme Court has held that past medical expenses are compensation for purposes of determining an award of attorney fees. *Bd. of Educ. v. Quintana*, 102 N.M. 433, 435, 697 P.2d 116, 118 (1985). Here, Worker's medical bills from late 2002 added up to $4,750.69. Because Worker's offer did not assert a claim for medical benefits, the final compensation order exceeded Worker's offer by the full $4,750.69.

{15} In addition, the TTD rate awarded to Worker in the final compensation order exceeded the TTD rate in Worker's offer for a compensation order to be taken. Worker's offer included a TTD rate of $260 per week, while the final compensation order awarded Worker a TTD rate of $268.87 per week. Worker below calculated the difference in these rates to be over $4,000 over the period of disability without dispute from Employer. Thus, the final compensation order exceeded Worker's offer by not only increasing Worker's TTD rate, but also by awarding Worker $4,750.69 in past medical bills.

{16} Because of these two amounts, the WCJ stated that Worker had "beat" the prior offer rejected by Employer. We understand Employer's position to be that these amounts pale in comparison to the victory Employer won by getting control over the MMI date. But the facts are that Dr. Marchand predicted an MMI date at a deposition taken two days before Worker's offer, and by the time of the hearing on attorney fees, it turned out that the MMI date was as Dr. Marchand had predicted. Under these circumstances, the WCJ could have viewed the MMI date dispute as a draw. Therefore, the WCJ could properly have found that the final compensation order exceeded Worker's offer to allow a compensation order to be taken.

**Although Employer Worked Diligently to Reach a Settlement with Worker and Worker's Attorney Did Not Spend the Bulk of His Time During Settlement Negotiations, the Fee Shifting Provision of Section 52–1–54(F)(4) Is Still Applicable to Employer under the Circumstances in this Case**

■ {17} Employer argues that the WCJ erred when he ordered Employer to

pay 100% of Worker's attorney fees because Worker failed to show that his attorney fees had increased between Worker's offer for a compensation order to be taken and Employer's second counteroffer. Citing *Woodson v. Phillips Petroleum Co.*, 102 N.M. 333, 339, 695 P.2d 483, 489 (1985), Employer contends the WCJ should have considered the time and effort expended by Worker's attorney in determining whether to require Employer to pay 100% of Worker's attorney fees. We disagree. The time and effort expended by an attorney is relevant to the amount of an attorney fee award, not to the fee-shifting scheme in Section 52–1–54(F). *See Woodson*, 102 N.M. at 339–40, 695 P.2d at 489–90 (holding that amount of attorney fee award was reasonable in light of the factors governing such an award, including the time spent by the worker's attorney).

{18} Employer claims that the record in this case indicates that between Worker's offer and Employer's second counteroffer, it was the effort of Employer that led to a settlement with Worker. Employer directs our attention to the holding in *Leo*, which concluded that the purpose of Section 52–1–54(F) was to encourage settlement. *Leo*, 118 N.M. at 362, 881 P.2d at 722. Therefore, Employer contends that because Employer was the party that attempted to effectuate a settlement in this case, we should reverse the WCJ's order awarding Worker 100% of his attorney fees to be paid by Employer as being inconsistent with the holding in *Leo*.

{19} Although we recognize that Employer worked in good faith with Worker to reach a settlement, we do not conclude that Employer's counteroffers were the only offers submitted that attempted to reach a settlement. Worker submitted an unambiguous, reasonable offer, which attempted to settle the case, albeit with terms favorable to Worker. Once Employer rejected Worker's offer, Employer became vulnerable to the fee shifting provision of Section 52–1–54(F)(4) if the final compensation order exceeded Worker's offer. Here, the final compensation order did exceed Worker's offer, and therefore the WCJ did not err in awarding Worker 100% of his attorney fees to be paid by Employer.

{20} We do not wish to be misunderstood as holding that the factors cited by Employer would not justify a WCJ's declining to award a worker 100% of his attorney fees under the circumstances of this case, where the facts relating to whether the amount Worker offered was less than the amount in the compensation order presented a close factual issue. Indeed, as the award of attorney fees in workers' compensation cases is discretionary, *Hise v. City of Albuquerque*, 2003–NMCA–015, ¶ 8, 133 N.M. 133, 61 P.3d 842, we believe it would have been well within the WCJ's discretion to consider Employer's reasonableness and the balance of what Worker gained during the settlement negotiations in the context of law that favors settlements, *see Leo*, 118 N.M. at 362, 881 P.2d at 722, and to have rejected Worker's request for 100% of his attorney fees. However, the question before us is not whether the circumstances of this case would have supported an opposite result. *See Hernandez v. Mead Foods, Inc.*, 104 N.M. 67, 71, 716 P.2d 645, 649 (Ct.App.1986), *limited on other grounds by Graham v. Presbyterian Hosp. Ctr.*, 104 N.M. 490, 492, 723 P.2d 259, 261 (Ct.App. 1986). It is whether the circumstances supported the WCJ's ruling. For all of the foregoing reasons, we cannot say that the WCJ erred as a matter of law.

## CONCLUSION

{21} We affirm the order of the WCJ awarding Worker 100% of his attorney fees to be paid by Employer pursuant to Section 52–1–54(F)(4), and we remand the matter to the WCJ for proceedings on Worker's request for additional fees for this appeal.

{22} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN and CYNTHIA A. FRY, Judges.