2007-NMCA-128

168 P.3d 177

Cynthia **LEONARD**, Worker–Appellee/Cross–Appellant,

v.

**PAYDAY PROFESSIONAL** and Bio–Cal Comp., Employer/Insurer–Appellee,

and

CNA Unisource and Continental Casualty Company, Employer/Insurer–Appellant/Cross–Appellee.

Nos. 26,787, 26,740.

Court of Appeals of New Mexico.

Aug. 7, 2007.

Patrick Larkin Fogel, Albuquerque, NM, for Appellee/Cross–Appellant.

French & Associates, P.C., Katherine E. Tourek, Albuquerque, NM, for Appellee.

Hatch, Allen & Shepherd, P.A., Kimberly A. Syra, Albuquerque, NM, for Appellant/Cross–Appellee.

## OPINION

BUSTAMANTE, Judge.

{1} This is a workers' compensation case in which Worker suffered two injuries to her back, each while working for a different employer. The case presents two issues: (1) whether the Workers' Compensation Judge (WCJ) erred by apportioning Worker's nonsurgical medical expenses evenly between the two employers, yet apportioning all surgical expenses to the second employer; (2) whether the WCJ erred in denying Worker's motion for attorney fees on the ground that Worker's offer of judgment had no legal effect. The issues were raised in separate appeals and later consolidated under Case No. 26,787.[1]

{2} We affirm the WCJ's ruling on apportionment because it was not contrary to law and because substantial evidence supports the ruling. We also affirm the WCJ's ruling on attorney fees.

## BACKGROUND

{3} On December 11, 1997, Worker suffered an injury to her back while working for Payday Professional (Payday). Worker received treatment from Dr. Reeve, which included chiropractic care, epidural injections, and pain-relieving medication. An MRI scan showed that Worker had disc degeneration and possibly a disc herniation. Worker continued to work full-time following her injury. Dr. Reeve pursued a "conservative" course of treatment in which surgery was an option but was not required. On May 20, 1998, Dr. Reeve placed Worker at maximum medical improvement (MMI) and gave her a 10% whole body impairment rating. Worker continued periodic treatment with Dr. Reeve and reported occasional pain and discomfort.

{4} On November 4, 1999, Worker suffered a second injury while working for a different employer, CNA Unisource (CNA). Worker stated that she did not recover from

1. A third issue regarding injunctive relief was raised in yet another appeal, No. 26,927, and will be resolved in a separate opinion.

the second injury to the same extent that she had recovered from the first, and that the pain from the second injury was more severe. The second injury aggravated her previous injury and may have caused additional disc movement. Dr. Reeve referred Worker to Dr. Claude Gelinas, an orthopedic surgeon, for an examination. Dr. Gelinas ordered a second MRI and, after reviewing it, determined that Worker had a disc disease that existed prior to her first injury. According to Dr. Gelinas, the 1997 injury aggravated the pre-existing condition and the 1999 injury re-aggravated the condition. Dr. Gelinas recommended that Worker undergo "a one-level fusion operation at L5–S1." Dr. Gelinas was reluctant to estimate the degree to which each of Worker's injuries contributed to her back condition, but concluded that surgery probably would not have been necessary had Worker not suffered her second injury. However, Dr. Gelinas also stated that the changes he noted in the second MRI could have occurred even if the second injury had not taken place. Dr. Reeve testified that Worker's ongoing symptoms were 70% attributable to the first injury and 30% attributable to the second.

{5} On April 27, 2005, Worker filed separate workers' compensation complaints against CNA and Payday seeking medical treatment. The cases were eventually consolidated by stipulation of the parties. The parties entered into mediation discussions but could not resolve the issue of each employer's liability for Worker's medical benefits. In the interest of having surgery performed at the earliest possible date, the mediator recommended that Payday and CNA each pay 50% of the cost of surgery with a complete reservation of rights. Worker and Payday accepted the mediator's recommended resolution, but CNA rejected it.

{6} On February 8, 2006, Worker sent an offer of judgment to counsel representing each employer. The offer stated the following terms:

1. Worker will withdraw her complaint if the employer/insurers[ ] will pay for the medical treatment prescribed by the Worker's authorized [healthcare professional] to include any back surgery prescribed by Dr. Gelinas.

2. In addition, Worker's attorney, in the event of acceptance of this offer, will reduce his attorney fees awarded by the court by five percent (5%), two and one-half percent (2½%) to the Worker and two and one-half percent (2½%) to the employer/insurers[ ].

The offer expired without a response from either Payday or CNA.

{7} After hearing testimony and reviewing the evidence, the WCJ entered his compensation order on April 19, 2006. The WCJ made the following pertinent findings of fact in the compensation order:

13. Worker had a need for non-surgical medical care following the accident of December 11, 1997.

14. Worker had a need for both non[-]surgical and surgical medical care following the accident of November [4, 1999].

15. Worker had reached maximum medical improvement on May 20, 1998, following the accident of December 11, 1997.

16. Worker's symptoms increased markedly after the accident of November 4, 1999.

. . . .

18. As a direct and proximate result of the accident[s] of December 11, 1997 and November 4, 1999, to a reasonable medical probability, Worker suffered an injury to the whole person. The nature of the injury is exacerbation of degenerative disk [sic] disease and spondylolisthesis at the L5–S1 level.

19. The November 4, 1999, accidental injury was a re-injury [of] the conditions suffered in the accident of December 11, 1997.

The WCJ then made the following conclusions:

12. Worker's need for non[-]surgical medical care is the result of both accidents in this case, and there is overlap in medical benefits as a result.

13. Non[-]surgical medical benefits should be apportioned equally between Employers and Insurers, as a result of overlap in medical care.

14. Worker's need for surgical medical care is the result of the second accident, and there is no overlap in surgical medical benefits.

15. Surgical medical benefits should not be apportioned, as they are exclusively the result of the second accident.

16. Surgical medical benefits should be provided and paid for by CNA[.]

{8} Worker thereafter filed a motion for attorney fees requesting that the employers pay the full sum of her attorney fees based upon their rejection of her offer of judgment. The WCJ entered an order granting Worker's attorney fees on May 11, 2006. However, the WCJ rejected Worker's request that the employers pay all of her attorney fees because "Worker's Offer of Judgment has no legal effect because it would not have disposed of the merits of the case." The WCJ ruled instead that Worker was responsible for 50% of her attorney fees, Payday was responsible for 12.5%, and CNA was required to pay 37.5%.

{9} CNA filed a notice of appeal and challenges the WCJ's apportionment ruling in the compensation order. Worker filed a notice of appeal challenging the WCJ's award of attorney fees.

## DISCUSSION

### I. Standard of Review

{10} We review workers' compensation orders using the whole record standard of review. *Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 126, 767 P.2d 363, 365 (Ct.App.1988), *modified on other grounds by Delgado v. Phelps Dodge Chino, Inc.*, 2001–NMSC–034, 131 N.M. 272, 34 P.3d 1148. Whole record review "contemplate[s] a canvass by the reviewing court of all the evidence bearing on a finding or decision, favorable and unfavorable, in order to determine if there is substantial evidence to support the result." *Id.* at 128, 767 P.2d at 367. We may not "substitute [our] judgment for that of the administrative agency," and we view "all evidence, favorable and unfavorable, ... in the light most favorable to the agency's decision." *Id.* at 129, 767 P.2d at 368. We will affirm the agency's decision if, after taking the entire record into consideration, "there is evidence for a reasonable mind to accept as adequate to support the conclusion reached." *Id.* at 128, 767 P.2d at 367. We review the WCJ's application of the law to the facts de novo. *Tom Growney Equip. Co. v. Jouett*, 2005–NMSC–015, ¶ 13, 137 N.M. 497, 113 P.3d 320.

### II. Apportionment

{11} CNA attacks the WCJ's apportionment ruling on two grounds. First, CNA argues that the WCJ erred as a matter of law by separately apportioning Worker's surgical and non-surgical medical expenses. More specifically, CNA claims that: (1) "it is inconsistent and contrary to logic for Worker's ... second injury to be 'causally connected' to her first injury for some treatment modalities but not others," (2) Payday is not "totally immune" from liability for surgical expenses, and (3) "there is no basis in New Mexico workers' compensation law for such treatment-specific ... apportionment." Second, CNA maintains that the WCJ's findings of fact are not supported by substantial evidence.

{12} Apportionment of benefits among multiple employers for a worker's successive injuries is authorized by NMSA 1978, § 52–1–47(D) (1990). *Jouett*, 2005–NMSC–015, ¶ 42, 137 N.M. 497, 113 P.3d 320. "When a disability develops gradually, or when it comes as the result of a succession of accidents, the [employer or] insurance carrier covering the risk at the time of the most recent injury or exposure bearing a causal relation to the disability is usually liable for the entire compensation." *Id.* ¶ 24 (internal quotation marks and citation omitted). However, under Section 52–1–47(D), "the current employer's liability is reduced to the extent of benefits paid or payable for disability resulting from the first accidental injury." *Jouett*, 2005–NMSC–015, ¶ 46, 137 N.M. 497, 113 P.3d 320 (internal quotation marks and citation omitted). Section 52–1–47(D) provides that:

[T]he compensation benefits payable by reason of disability caused by accidental injury shall be reduced by the compensation benefits paid or payable on account of any prior injury suffered by the worker if compensation benefits in both instances are for injury to the same member or function ... and if the compensation benefits payable on account of the subsequent injury would, in whole or in part, duplicate the benefits paid or payable on account of such prior injury.

Section 52–1–47(D) therefore prevents a worker who has successive injuries to the same member or function from obtaining a double recovery. *Garcia v. Mora Painting & Decorating,* 112 N.M. 596, 599, 817 P.2d 1238, 1241 (Ct.App.1991). However, we have also stated that "Section 52–1–47(D) is not merely a device for preventing a double recovery. It is an affirmative allocation of the burden in a successive injuries situation." *Garcia,* 112 N.M. at 603, 817 P.2d at 1245 (internal quotation marks and citation omitted).

{13} In the present case, the WCJ found that Worker's need for non-surgical medical care was a result of both accidents and that non-surgical medical benefits should be apportioned equally between Payday and CNA. The WCJ further concluded that Worker's need for surgery was 100% related to the second injury and that CNA should therefore provide the full amount of Worker's surgical medical benefits.

{14} CNA argues that the WCJ's order was contrary to logic because the WCJ found that the second injury was an aggravation of the first, but only held Payday liable for non-surgical medical benefits while holding CNA liable for both non-surgical and surgical medical benefits. In other words, CNA maintains that, if the first accident is partially to blame for Worker's present condition, then Worker's need for surgery must also be a result of the first accident, at least to some extent. CNA also points out that Dr. Gelinas testified that Worker's need for surgery could have arisen had the second accident never occurred. Therefore, according to CNA, *all* treatment should be apportioned between CNA and Payday, not just the non-surgical medical benefits.

{15} CNA's argument is unpersuasive. After reviewing the whole record, we hold that Dr. Gelinas' testimony that surgery would not have been necessary had Worker not suffered her second injury, although equivocal in light of his other statements, is evidence that a reasonable mind could accept as adequate to support the WCJ's decision. Furthermore, we do not read the compensation order as necessarily holding that the first injury had no causal connection whatsoever to Worker's present need for surgery. As CNA correctly points out, the WCJ ruled that Worker's back injury was a "direct and proximate result" of both accidents. Accordingly, the WCJ fashioned a remedy in which each employer would be liable for the expenses that the WCJ found to correspond to that employer's risk. The WCJ found that Payday was liable for some of Worker's ongoing, non-surgical medical care, and that Worker would not have needed surgery—and thus Payday would not have been liable for Worker's surgery—had the second accident never taken place.

{16} In contrast, the WCJ found that CNA was liable for Worker's non-surgical and surgical medical benefits. Although he did not explicitly cite Section 52–1–47(D) in the compensation order, the WCJ essentially concluded that the surgery was not "payable" on account of Worker's first injury within the meaning of the statute. Therefore, CNA was not entitled to a reduction of its liability for Worker's surgical medical benefits. *Jouett,* 2005–NMSC–015, ¶ 46, 137 N.M. 497, 113 P.3d 320. We see no error in the WCJ's conclusion and hold that it is supported by substantial evidence. Moreover, Worker correctly points out that the WCJ's apportionment complies with Section 52–1–47(D) in that it does not provide Worker with a double recovery. The fact that CNA has cited evidence in the record to support its theory that the first injury contributed to Worker's need for back surgery does not alter our analysis. *See Abeyta v. Bumper To Bumper Auto Salvage,* 2005–NMCA–087, ¶ 20, 137 N.M. 800, 115 P.3d 816 ("[T]he question before us is not whether the circumstances of

this case would have supported an opposite result. It is whether the circumstances supported the WCJ's ruling." (citation omitted)).

{17} CNA's remaining arguments are equally unavailing. For example, CNA asserts that "the WCJ effectively made Payday totally immune for one type of treatment." In support of this argument, CNA cites our decision in *McMains v. Aztec Well Service.*, 119 N.M. 22, 24, 888 P.2d 468, 470 (Ct.App. 1994), as standing for the proposition that, in a successive injuries case, a first employer is immune from an apportionment of liability for medical care "only if there is no possibility that Worker would need future medical care for [her] back injury had there been no [second] accident." Therefore, according to CNA, the WCJ could not hold Payday immune because the record demonstrates a possibility that surgery would have been necessary despite the second accident.

{18} CNA's citation to *McMains* is inapposite. The WCJ in *McMains* found that the worker's successive accidents caused his disability, yet ruled that the subsequent employer was liable for *all* future medical care. *Id.* at 23–24, 888 P.2d at 469–70. We reversed, holding that the first employer was "liable for future medical care arising from the [first] accident that would be required even if the [subsequent] accident had not occurred." *Id.* at 24, 888 P.2d at 470. The immunity to which we referred in *McMains* was essentially a total immunity, i.e., immunity "from *any* potential future liability for medical care arising from the [first] accident." *Id.* (emphasis added). However, the WCJ in the present case did not hold Payday immune from all future medical care; to the contrary, the WCJ apportioned 50% of Worker's non-surgical medical benefits to Payday. Again, we see no error in the WCJ's conclusion that surgery would not have been necessary had the second accident not occurred.

{19} CNA next argues that there is no basis in New Mexico law for apportioning liability for some medical treatments but not others. However, CNA has not set forth any authority *prohibiting* such an apportionment. Instead, CNA argues that allowing treatment-specific apportionment could lead to absurd results and increased litigation over fine points of causation and treatment. In the absence of any authority to the contrary, and in light of our deferential standard of review, we decline to overturn the WCJ's decision simply because it involves a novel application of Section 52–1–47(D). If such an application of Section 52–1–47(D) becomes more prevalent and has a deleterious effect on the workers' compensation system in New Mexico, we are confident that the Workers' Compensation Administration, the appellate courts, and/or the legislature will be able to address the situation appropriately at that time.

{20} Finally, CNA directly attacks the WCJ's findings of fact for lack of substantial evidence. In support of this argument, CNA essentially claims that Dr. Gelinas' opinion was unworthy of belief and that Dr. Reeve's opinion should carry more weight. However, it was the WCJ's role to resolve these issues at trial. *Garnsey v. Concrete Inc. of Hobbs*, 1996–NMCA–081, ¶ 20, 122 N.M. 195, 922 P.2d 577 ("It is the duty of the fact-finder to weigh the evidence and resolve any conflicts."). Although on appeal we take the whole record into account, we do not reweigh the evidence. *Tallman*, 108 N.M. at 127, 767 P.2d at 366 ("A reviewing court may not reweigh the evidence . . . ."). As stated previously, we conclude that substantial evidence supports the WCJ's decision. We now turn to the question of whether the WCJ erred in denying Worker's motion for attorney fees.

III. Attorney Fees

{21} Worker does not challenge the amount of attorney fees awarded, but instead argues that the WCJ erred in refusing to apply the fee-shifting provision of NMSA 1978, § 52–1–54(F)(4) (2003). Although we normally review a WCJ's award of attorney fees for an abuse of discretion, the issue of whether the WCJ correctly interpreted Section 52–1–54(F)(4) is a question of law that we review de novo. *Hise v. City of Albuquerque*, 2003–NMCA–015, ¶ 8, 133 N.M. 133, 61 P.3d 842. Section 52–1–54(F)(4) provides that:

F. After a recommended resolution has been issued and rejected . . . the employer or claimant may serve upon the opposing party an offer to allow a compensation

order to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued, subject to the following:

. . . .

(4) if the worker's offer was less than the amount awarded by the compensation order, the employer shall pay one hundred percent of the attorney fees to be paid the worker's attorney, and the worker shall be relieved from any responsibility for paying any portion of the worker's attorney fees.

{22} In the instant case, Worker presented the employers with an offer of judgment that proposed a two and one-half percent reduction in attorney fees for each employer in exchange for the employers' willingness to cover Worker's medical expenses, including the cost of Worker's surgery. However, the offer of judgment did not specify a dollar amount or a percentage of liability for which each employer would be responsible. The parties do not dispute that the employers' failure to respond to the offer constituted a rejection of it.

{23} In denying Worker's motion for attorney fees, the WCJ ruled that Worker's offer "has no legal effect because it would not have disposed of the merits of this case." The WCJ explained his reasoning in a memorandum opinion filed on April 27, 2006:

It is apparent . . . that a critical issue in the outcome of this case was the relative responsibilities of the Employers and Insurers to pay for surgical medical care for the Worker. The offer of judgment did not address this issue. Because the offer of judgment was silent on the allocation issue, acceptance of the offer of judgment by the Employers and their Insurers would have left unanswered one of the key questions in the case. . . . This flaw in the offer represents a fatal error in the offer and therefore the offer must be deemed to be incomplete. The offer of judgment is a nullity.

{24} On appeal, Worker asserts that her offer of judgment, if accepted, would have disposed of all issues between her and the employers. Worker notes that neither of the employers filed a cross-claim against the oth-

er and that the employers would have had the option to move for post-litigation proceedings for reimbursement, if necessary. Therefore, Worker could have been dismissed from the case without affecting the employers' rights or their ability to defend or prosecute the remaining issues. Finally, Worker contends that the legislative intent of Section 52–1–54(F) is to encourage settlement in workers' compensation cases and, in light of that purpose, Worker's offer of judgment was not without legal effect merely because it left some issues unresolved.

{25} Worker is correct that the purpose of Section 52–1–54(F) is to encourage settlement. *Leo v. Cornucopia Rest.*, 118 N.M. 354, 362, 881 P.2d 714, 722 (Ct.App.1994). One of the mechanisms employed within the statute to achieve the goal of settlement is the "financial sanction against a party that rejects an offer of judgment and fails to obtain a more favorable outcome at the formal hearing." *Id.* However, in the present case, Worker's offer of judgment did not specify an outcome in terms of each employer's liability because it was silent regarding apportionment. Because the offer of judgment lacked any frame of reference regarding the employers' liability, the WCJ's compensation order cannot be said to provide a more or less favorable outcome for the employers. For this reason, we agree with the WCJ that the offer of judgment was fatally defective.

{26} Nevertheless, Worker cites our opinion in *Abeyta* for the proposition that an offer of judgment may still be valid even where certain details are left unresolved. However, the unresolved issues in *Abeyta* were the worker's date of MMI and the identity of the doctor who would determine the date of MMI. 2005–NMCA–087, ¶ 10. We concluded that there was no basis to set an MMI while the worker's healing process was still underway, and that the worker was sufficiently clear as to which doctor should determine the MMI date. *See id.* Therefore, the unresolved issues in *Abeyta* were not so critical as to render the offer of judgment invalid. *Id.* ¶¶ 12–13. In contrast, the

issue left unresolved in the present case—apportionment—was the main, contested issue in the litigation. We agree with the WCJ that the issue of apportionment was too important to have been left unresolved in Worker's offer of judgment.

## CONCLUSION

{27} For the foregoing reasons, we affirm the WCJ's compensation order and his order granting Worker's attorney fees. The case is remanded for proceedings consistent with this opinion.

{28} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Chief Judge and LYNN PICKARD, Judge.