CLINGMAN, Justice.
{1} Casey R. Baker (Worker) appeals the decision by the Workers' Compensation Administration denying his request that Endeavor Services, Inc. and Great West Casualty Company (Employer) pay 100% of Worker's attorney fees pursuant to the fee-shifting provision set forth in NMSA 1978, Section 52-1-54(F)(4) (2003, amended 2013). At issue is whether Worker made an offer of judgment that was sufficient to trigger the fee-shifting provision. Worker's offer of judgment put Employer on notice that Worker was proposing an unambiguous partial settlement and that Worker intended to invoke the fee-shifting statute. We conclude that Worker made a valid offer under Section 52-1-54(F) (2003) and hold that the workers' compensation judge erred as a matter of law by declining to apply the mandatory fee-shifting provision. We therefore reverse and remand.
I. DEFICIENCIES IN THE RECORD PROPER
{2} It is the duty of this Court to decide the cases before it if the factual record is sufficient to do so. The record proper before this Court is lacking in a number of ways. However, requiring a perfect record would mean this Court would rarely decide any cases. The parties in this case do not dispute the factual findings of the workers' compensation judge, but rather the parties dispute the judge's application of the law to the facts. Unchallenged findings of fact are binding on this Court. State ex rel. State Highway Comm'n v. Sherman , 1971-NMSC-009, ¶¶ 2-3, 82 N.M. 316, 481 P.2d 104 ; State ex rel. Thornton v. Hesselden Construction Co. , 1969-NMSC-036 ¶ 4, 80 N.M. 121, 452 P.2d 190 ("[F]ailing to challenge any one of the trial court's findings ..., [a party] is bound by the findings."); Gallegos v. Kennedy , 1968-NMSC-170, ¶ 6, 79 N.M. 590, 446 P.2d 642 ("Unchallenged findings are the *267 facts upon which the case rests on appeal and are binding on this court."). "Unless findings are directly attacked, they are the facts in this court, and a party claiming error on the part of the trial court must be able to point clearly to the alleged error." Sherman , 1971-NMSC-009, ¶¶ 2-3, 82 N.M. 316, 481 P.2d 104 (citing Morris v. Merchant , 1967-NMSC-026, ¶ 21, 77 N.M. 411, 423 P.2d 606 ). Nowhere in the brief in chief, answer brief, or reply brief do the parties challenge the legitimacy of the facts presented. Instead, the parties dispute the analysis by the workers' compensation judge of the offer of judgment and the judge's application of Section 52-1-54(F)(4) (2003) to the offer. We conclude that sufficient factual certainty exists in the record before us to decide this case.
II. BACKGROUND
{3} Worker suffered injuries as a result of a compensable motor vehicle accident on October 14, 2011. On January 9, 2012, Worker filed his first workers' compensation complaint, seeking medical benefits, temporary total disability (TTD) benefits, and attorney fees. The parties participated in a mediation conference on February 17, 2012, and both parties accepted the mediator's recommended resolution of Worker's first complaint. However, a number of issues remained unresolved, including the total amount of Worker's medical expenses, Worker's preinjury weekly wage, and the compensation rate to which Worker was entitled. These issues remained unresolved until December 21, 2016, following a trial on the merits.
{4} On July 22, 2013, Dr. Balkman assessed Worker to determine whether he had reached his maximum medical improvement (MMI). See NMSA 1978, § 52-1-24.1 (1990) ("As used in the Workers' Compensation Act, 'date of maximum medical improvement' means the date after which further recovery from or lasting improvement to an injury can no longer be reasonably anticipated based upon reasonable medical probability as determined by a health care provider."). Once a medical care provider, like Dr. Balkman, finds a worker to be at MMI, the healing process is deemed complete, see id. , and the worker's permanent physical impairment can be assessed. See NMSA 1978, § 52-1-26 (1990, amended 2017) ; Smith v. Cutler Repaving , 1999-NMCA-030, ¶ 10, 126 N.M. 725, 974 P.2d 1182 ("Key to determining MMI is 'expert medical testimony' regarding whether the injured worker 'is more likely than not' to recover further." (citation omitted) ). A medical care provider quantifies the worker's permanent impairment into a percentage and, from that percentage, the worker's permanent partial disability (PPD) is calculated. See NMSA 1978, § 52-1-26.1 (1990) ; NMSA 1978, § 52-1-26.4(D) (2003). Dr. Balkman found Worker to be at MMI with an associated whole person impairment (WPI) rating of only 5%.
{5} Employer accepted these findings and immediately began paying benefits in accordance with the July 22, 2013, MMI date and the 5% WPI rating. Dr. Balkman's findings had the effect of limiting Worker's available compensation, paid via PPD, to significantly less than what Worker believed he was entitled to. Worker contested Dr. Balkman's findings, arguing that he had not reached MMI and was entitled to continued payment of TTD benefits, rather than PPD benefits. Ultimately Worker argued that he had not reached MMI on July 22, 2013, counter to Dr. Balkman's findings, and in the future when he did reach MMI, he would be entitled to a WPI rating of 37%. Dr. Balkman later amended her findings on May 19, 2014, and determined Worker to have a WPI of 13% but did not change the date of MMI nor agree with Worker's assertion that his injuries warranted a 37% WPI rating.
{6} On June 24, 2014, Worker was involved in a second motor vehicle accident, a rear end collision, when he was driving from his home to Dr. Balkman's office to be treated for the injuries stemming from his October 14, 2011, accident. Following the second accident, Worker filed a second workers' compensation complaint concerning many of the issues that remained unresolved from the first complaint. A second mediation occurred on September 4, 2014. Employer rejected the mediator's recommendations. The parties continued to litigate the implications of the second accident, the date of MMI, Worker's *268 WPI, and the compensation to which Worker was entitled.
{7} On June 18, 2015, Employer changed Worker's treating physician to Dr. Reeve. Employer did not authorize Dr. Reeve to provide a second impairment assessment, reasoning that Dr. Balkman's assessment was sufficient.
{8} On November 11, 2015, Worker served Employer with an offer of judgment. In the offer of judgment, Worker included four relevant terms to settle the case:[1]
[1] ... Worker's weekly payment rate shall be $629.11....
[2] Worker's work-related injuries and conditions have not reached [MMI].
[3] Pursuant to [NMSA 1978,] § 52-1-25.1 [ (2005), amended 2017) ], Worker is entitled to [TTD] benefits from October 14, 2011, and continuing until MMI is reached in the future for all work-related injuries and conditions.
[4] Employer ... shall forthwith issue payment of arrears to bring Worker's TTD benefits current at the rate of $629.11 per week, less $100.00 . [Employer is] entitled to a credit for all indemnity payments made to date to Worker, plus $100.00 .
Additionally, Worker offered to split his attorney fees equally with Employer. Thereafter, the workers' compensation judge scheduled a settlement conference for February 1, 2016. Employer rejected Worker's offer of judgment.
{9} The parties failed to reach a settlement and proceeded to trial on December 14, 2016. About a week before trial, Worker's attorney paid the $3,219.48 cost of a second impairment assessment by Dr. Reeve. Contrary to Dr. Balkman's findings, Dr. Reeve found that Worker reached MMI on December 7, 2016, and had a WPI rating of 37%. Also prior to trial the parties stipulated that Worker's TTD compensation rate was $629.11 per week. At the end of the trial, the workers' compensation judge issued a compensation order that included the following findings and conclusions:
[1] Worker reached [MMI] on December 7, 2016.
[2] Worker has a combined thirty-seven percent (37%) impairment as a result of his work injuries.
....
[3] The [second] motor vehicle accident was as a result of the work accident and is part of the compensable claim.
....
[4] Worker's compensation rate is $629.11.
[5] Worker is entitled to [TTD] benefits from date of accident to December 7, 2016.
[6] Worker is entitled to [PPD] benefits at eighty-five percent (85%) commencing December 8, 2016 and continuing until conclusion of the benefit period unless otherwise ordered.
....
[7] Employer is responsible for the $3,219.48 charge from Dr. Reeve for preparation of his final report.
[8] Worker's attorney is entitled to a reasonable fee to be set forth under separate order.
{10} Following trial, Worker filed an application for attorney fees and asked the workers' compensation judge to order Employer to pay 100% of Worker's attorney fees under Section 52-1-54(F)(4) (2003). The workers' compensation judge awarded Worker $42,925 in attorney fees and ordered each party to pay 50% of those fees. The workers' compensation judge declined to order Employer to pay 100% of Worker's attorney fees because "Worker's Offer of Judgment failed to address material facts and issues in dispute and determined at trial."
{11} Both parties appealed to the Court of Appeals. Employer contended that the workers' compensation judge erred by awarding benefits based on an MMI date of December 7, 2016. See Baker v. Endeavor Servs., Inc. , A-1-CA-36142 and A-1-CA-36272, mem. op. ¶ 1, 2017 WL 4082217 (Aug. 8, 2017) (nonprecedential). Worker filed a cross-appeal, arguing that the workers' compensation judge *269 erred by failing to order Employer to pay 100% of Worker's attorney fees. Id. ¶¶ 1-2. The Court of Appeals affirmed the compensation order, including the finding that Worker reached MMI on December 7, 2016. Id. ¶ 1. The Court of Appeals also affirmed the order requiring each party to pay 50% of Worker's attorney fees, concluding that Worker's offer of judgment left unaddressed PPD benefits, medical benefits, "or any other benefits, aside from attorney fees, that were contested issues and which worker was ultimately awarded." Id. ¶¶ 1-2. The Court of Appeals held that Worker's "offer did not supply an appropriate basis for application of the fee-shifting provision." Id. ¶ 3.
{12} Worker filed a petition for writ of certiorari, asking this Court to review (1) whether the workers' compensation judge erred by not ordering Employer to pay 100% of Worker's attorney fees, and (2) whether the Court of Appeals opinion affirming the workers' compensation judge conflicted with Section 52-1-54(F)(4) (2003) and Abeyta v. Bumper to Bumper Auto Salvage , 2005-NMCA-087, 137 N.M. 800, 115 P.3d 816. We granted certiorari to review the workers' compensation judge's application of the fee-shifting provision in Section 52-1-54(F)(4) (2003) to Worker's offer of judgment.
III. DISCUSSION
{13} Employer relies on Leonard v. Payday Professional , 2007-NMCA-128, ¶ 23, 142 N.M. 605, 168 P.3d 177, to argue that Worker's offer was not a valid offer of judgment under Section 52-1-54(F) (2003) because the offer failed to address two contested issues. Specifically, Employer asserts that Worker's offer of judgment did not establish either the date on which Worker reached MMI or the PPD benefit Worker was entitled to, issues that were in dispute at the time Worker made his offer. Employer notes that before Worker made his offer of judgment, Dr. Balkman had found Worker to be at MMI and assigned Worker a WPI rating. Employer does not dispute the amount of attorney fees awarded but argues that the fee-shifting provision in Section 52-1-54(F)(4) (2003) should not apply because accepting Worker's offer could not have ended the litigation in this case.
{14} Conversely, Worker argues that his offer of judgment was valid and that it was not necessary to specify the date of MMI or the PPD benefit. Worker explains that Dr. Balkman's determination of MMI, on which Employer relies, was erroneous and that Worker had not yet reached MMI at the time the offer was made. He further contends that MMI need not be established as a prerequisite to a valid offer. In support of his argument, Worker relies on Abeyta , 2005-NMCA-087, ¶ 13, 137 N.M. 800, 115 P.3d 816, to illustrate that an offer of judgment may be valid even if the offer is made before a worker has reached MMI.
A. Standard of Review
{15} In this case, the parties do not dispute the factual findings of the workers' compensation judge, so we need only to review the application of Section 52-1-54(F)(4) (2003) to the facts. When we review a workers' compensation judge's interpretation of statutory requirements and the application of the law to the facts, we apply a de novo standard of review. Dewitt v. Rent-A-Center, Inc. , 2009-NMSC-032, ¶ 14, 146 N.M. 453, 212 P.3d 341. "We look first to the plain meaning of the statute's words, and we construe the provisions of the [Workers' Compensation] Act together to produce a harmonious whole." Id. (internal quotation marks and citation omitted). "Our main goal in statutory construction is to give effect to the intent of the legislature." Grine v. Peabody Nat. Res. , 2006-NMSC-031, ¶ 17, 140 N.M. 30, 139 P.3d 190 (internal quotation marks and citation omitted).
B. The Purpose of Section 52-1-54(F) (2003) Is to Encourage Prompt Settlement of Workers' Compensation Disputes
{16} The purpose of the Workers' Compensation Act, NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2017), is to expeditiously and efficiently compensate injured workers while also being fair to employers. See NMSA 1978, § 52-5-1 (1990) (stating that the intent of the legislation is the "quick and *270 efficient delivery of indemnity and medical benefits ... at a reasonable cost to employers"). To aid in expeditiously disposing of claims, a mediator "evaluates all initial complaints." See 11.4.4.10(A) NMAC. Following a mediation conference, the mediator issues a recommended resolution of disputed issues. See 11.4.4.10(C)-(D) NMAC. If either party rejects the recommended resolution, then the employer or worker may serve on the opposing party an offer of judgment in accordance with Section 52-1-54(F) (2003). The pertinent portion of Section 52-1-54(F) (2003) reads,
After a recommended resolution has been issued and rejected, but more than ten days before a trial begins, the employer or claimant may serve upon the opposing party an offer to allow a compensation order to be taken against [the employer or claimant] for the money or property or to the effect specified in [the] offer, with costs then accrued....
{17} An offer of judgment is essentially an offer to stipulate to the issuance of a formal compensation order. See § 52-1-54(F) (2003) ; see also Rivera v. Flint Energy , 2011-NMCA-119, ¶¶ 2-3, 9, 268 P.3d 525 (discussing the formal entry of a compensation order following the employer's rejection of an offer of judgment and after a trial of the worker's claims). In an effort to promote settlement and avoid lengthy litigation, Section 52-1-54(F)(4) (2003) encourages making and accepting reasonable offers of judgment by imposing financial sanctions on a party who rejects an offer of judgment and does not obtain a more favorable ruling in the compensation order. See Hise v. City of Albuquerque , 2003-NMCA-015, ¶ 9, 133 N.M. 133, 61 P.3d 842 ; Leo v. Cornucopia Rest. , 1994-NMCA-099, ¶ 28, 118 N.M. 354, 881 P.2d 714. Section 52-1-54(F)(4) (2003) states specifically,
[I]f the worker's offer was less than the amount awarded by the compensation order, the employer shall pay one hundred percent [100%] of the attorney fees to be paid the worker's attorney, and the worker shall be relieved from any responsibility for paying any portion of the worker's attorney fees.
C. Worker's Offer of Judgment Was Valid
{18} Three requirements must be met for a worker's offer of judgment to trigger the fee-shifting provision pursuant to Section 52-1-54(F)(4) (2003). See Rivera , 2011-NMCA-119, ¶ 3, 268 P.3d 525. To force the employer to pay 100% of the attorney fees, an offer of judgment must be (1) a valid offer under Section 52-1-54(F) (2003), (2) for an amount less than the award at trial, and (3) an offer which the employer rejected. Id. In this case, the parties dispute only whether Worker satisfied the first requirement by making a valid offer under Section 52-1-54(F) (2003). Employer does not dispute that Worker offered to accept less than he was subsequently awarded at trial or that Employer rejected Worker's offer.
{19} In Rivera , the Court of Appeals held that a worker's offer of judgment was not a valid offer for the purposes of Section 52-1-54(F) (2003) because it failed to provide the employer with notice that the offer was intended to trigger the fee-shifting provision of Section 52-1-54(F) (2003). Rivera , 2011-NMCA-119, ¶ 6, 268 P.3d 525. Rivera observed that this notice requirement stems from basic contract principles. Id. ¶ 8 (citing Naranjo v. Paull , 1990-NMCA-111, ¶¶ 14-15, 111 N.M. 165, 803 P.2d 254 ). "In the law of contracts an offer is a proposal setting forth the essential terms of the prospective transaction." Naranjo , 1990-NMCA-111, ¶ 14, 111 N.M. 165, 803 P.2d 254. Thus, "[t]he notion that a choice, to be legally binding, should be a 'knowing' choice is well-established in similar situations." Id. ¶ 15. Rivera concluded that these contract principles extend to an offer of judgment under Section 52-1-54(F)(4) (2003). Rivera , 2011-NMCA-119, ¶¶ 8-9, 268 P.3d 525.
{20} For an offer of judgment to be legally binding it must set forth language making clear the intent of the offeror and implications of acceptance by the opposing party. See id. ¶ 9. In this case, the offer of judgment made clear that Worker was "allow[ing] a compensation order to be taken" if Employer accepted the terms of the offer. Section 52-1-54(F) (2003) ; see Rivera , 2011-NMCA-119, ¶ 10, 268 P.3d 525 (holding a *271 worker's offer invalid under Section 52-1-54(F) (2003) for failing to "put Employer on notice that the offer was one to allow a compensation order to be taken against Employer"). Worker specifically mentioned that attorney fees would be split equally if the offer was accepted. Unlike Rivera , 2011-NMCA-119, ¶ 9, 268 P.3d 525, there was no question whether Worker proposed an offer of judgment or merely an offer of settlement because the language "offer of judgment" was used in Worker's certificate of service. This language put Employer on notice that the offer was intended to trigger the fee-shifting provision of Section 52-1-54(F) (2003) ; therefore, the offer was not ambiguous in that regard.
{21} Just as the offer of judgment must put the opposing party on notice of its implications, to be valid the offer must also address the critical issues raised in the complaint. Leonard , 2007-NMCA-128, ¶¶ 23, 25-26, 142 N.M. 605, 168 P.3d 177. If an offer of judgment does not dispose of the critical issues raised in a worker's compensation complaint, the offer is ambiguous and therefore invalid. Id. The offer must, at a minimum, provide a "frame of reference regarding the [opposing party's] liability." Id. ¶¶ 23, 25. The opposing party should be able to discern what its liability will be in order to make an informed decision to accept or reject the offer. Id. The terms of the offer of judgment must also allow the workers' compensation judge to ascertain whether the offeror received a more or less favorable outcome in the final compensation order compared to what was offered in the offer of judgment. Id. ¶ 25.
{22} The Court of Appeals in Leonard found critical issues to be absent from the offer of judgment and concluded that the offer "was fatally defective." Id. Leonard was concerned with apportioning liability for a worker's injury between two employers. Id. ¶¶ 1, 5. The worker in Leonard presented an offer that did not address either employer's liability relative to the other employer. Id. ¶ 26. Therefore, the employers lacked any frame of reference as to what their respective liabilities would be if they were to accept the offer. Id. ¶ 25. Moreover, because the offer in Leonard was silent regarding the apportionment of liability, the workers' compensation judge was unable to determine whether the final compensation order provided a more or less favorable outcome to the worker. Id. Without answering that critical question, the offer was too ambiguous to be valid. Id. ¶ 26.
{23} Here, although Employer points to uncertainty about the date of MMI and the rate of PPD as sufficient to invalidate the offer of judgment, these are not critical issues if the worker's healing process is incomplete. See Abeyta , 2005-NMCA-087, ¶ 10, 137 N.M. 800, 115 P.3d 816 ("[T]here is no basis for setting an MMI date if the healing process is still continuing."). The absence of an MMI date does not preclude an opposing party from ascertaining its potential liability set out in an offer of judgment. See id. ¶¶ 10-11. This reasoning of the Court of Appeals in Abeyta is consistent with the statutory provision that no permanent physical impairment or WPI can be deduced until the worker has completed the healing process because, until MMI is reached, no PPD benefits can be determined. See § 52-1-26(D) (1990). Further, to force a worker or employer to include details in an offer of judgment that are dependent on the healing process of the worker would drastically delay settlements in compensation cases. See Abeyta , 2005-NMCA-087, ¶ 13, 137 N.M. 800, 115 P.3d 816 (stating that authorizing only those settlements where offers of judgment are delayed until completion of the healing process would "undercut" the intent and purpose of the Workers' Compensation Act). Unlike the offer of judgment in Leonard , the offer of judgment in Abeyta was unambiguous because the employer's liability was "not susceptible to more than one interpretation" despite the absence of an MMI date. Abeyta , 2005-NMCA-087, ¶¶ 11-13, 137 N.M. 800, 115 P.3d 816.
{24} In this case, Worker set forth his proposed resolution of MMI and PPD in the offer of judgment which states, "Pursuant to § 52-1-25.1 [ (2005) ], Worker is entitled to [TTD] benefits from October 14, 2011 [date of injury], and continuing until MMI is reached in the future for all work-related *272 injuries and conditions." Employer argues this language rendered the offer of judgment fatally ambiguous because the MMI date was not set at the time of Worker's offer. However, the language in Worker's offer of judgment was nearly identical to the language used by the worker in Abeyta . The worker in Abeyta offered to accept "TTD benefits paid for the time period from the date of injury until ... [MMI] as determined by [the treating physician]." Abeyta , 2005-NMCA-087, ¶ 3, 137 N.M. 800, 115 P.3d 816 (omission in original) (internal quotation marks omitted). We recognize, as did the Court of Appeals in Abeyta , that the absence of an established MMI date presents a degree of risk to the employer. See id. ¶ 11. However, risk posed by an offer is different from ambiguity. The offers of judgment at issue in Abeyta and in this case are not susceptible to more than one interpretation. See id. ¶¶ 10-11. The Court of Appeals in Abeyta analyzed the language of the offer of judgment and found that, although lacking specific details, the employer understood the implications of the offer and understood the worker's intent in offering it but "found [the offer] too risky to undertake." Id. ¶¶ 10-12. Moreover, the workers' compensation judge in Abeyta was able to subsequently ascertain that the amount proposed in the worker's offer of judgment was less than what was awarded in the final compensation order. See id. ¶ 1. We reach the same conclusion as did the Court of Appeals in Abeyta . See id. ¶¶ 14-16.
{25} By November 11, 2015, when Worker filed the offer of judgment, Employer in anticipation of the potential for fee-shifting under Section 52-1-54(F)(4) (2003) could have filed an offer of judgment of its own. This would have exposed Worker to the same risk of fee-shifting as that to which Employer was then exposed. See § 52-1-54(F)(3) (2003). Or Employer could have entered into a partial settlement with Worker, effectively limiting its liability by constraining the issues to be litigated. Instead Employer took no action and stood by the July 22, 2013, MMI assessment which Worker found unreasonable. Although MMI was not yet determined and the PPD benefits and WPI rating remained unknown at the time of Worker's offer of judgment, the framework of what Worker offered was clear, and Employer was well informed as to the scope of its liability. Worker's offer was unambiguous.
{26} An argument premised on an employer's dislike of the offer of judgment is not enough to render the offer defective. An offer of judgment is like any other offer to enter into a contract. If one side does not like the terms of the contract or does not agree with the other side's assertions, no contract need be formed. But in order "to encourage settlement of compensation cases by authorizing both parties to make offers of judgment," the Workers' Compensation Act requires the imposition of sanctions on parties who are unwilling to settle on reasonable terms. See Abeyta , 2005 NMCA-087, ¶ 13, 137 N.M. 800, 115 P.3d 816 (quoting Leo , 1994-NMCA-099, ¶ 28, 118 N.M. 354, 881 P.2d 714 (internal quotation marks omitted) ).
{27} Employer also argues that Worker's offer of judgment is invalid because Employer's acceptance of the offer would not have ended the litigation. We do not read Section 52-1-54(F)(4) (2003) as requiring a worker's offer of judgment to propose the settlement of all issues in order to shift all attorney fees to the employer, nor would an employer's offer of judgment need to propose the settlement of all issues in order to shift all attorney fees to the worker under Section 52-1-54(F)(3) (2003). As we discussed previously, as long as the offer of judgment provides a sufficient frame of reference concerning contested issues, questions raised in the complaint may be left unresolved. See Leonard , 2007-NMCA-128, ¶¶ 25-26, 142 N.M. 605, 168 P.3d 177. In workers' compensation cases, the possibility of litigation continues until the worker is both healed and fully compensated. Until that time, disputes regarding the worker's medical bills, compensation rate, disability rating, or any number of other issues may arise. The purpose of an offer of judgment is to incentivize resolution of the complaint, but the offer's validity does not rest on all issues related to the worker's injury being immediately and completely resolved.
{28} We conclude, based on the plain language and stated purpose of the Workers' Compensation Act and the collective reasoning *273 of Abeyta , Leonard , and Rivera , that Worker made a valid offer of judgment, sufficient to trigger the fee-shifting provision set forth in Section 52-1-54(F)(4) (2003).
D. Fee-Shifting Is Mandatory If the Requirements of Section 52-1-54(F) (2003) Are Met
{29} Employer relies on Abeyta , 2005-NMCA-087, ¶ 20, 137 N.M. 800, 115 P.3d 816, to contend that, even if Worker's offer was valid under Section 52-1-54(F) (2003), the workers' compensation judge had discretion to award Worker only 50% of his attorney fees. Worker argues that the workers' compensation judge must apply the statute's fee-shifting provision if the requirements of Section 52-1-54(F) (2003) are met. Worker, therefore, asserts that the workers' compensation judge erred as a matter of law by declining to order Employer to pay 100% of Worker's attorney fees. We agree with Worker.
{30} The plain language of the statute is clear and unambiguous and requires attorney fees to be shifted to the rejecting party if the final compensation awarded to the offeror exceeds what was initially offered. See § 52-1-54(F)(3)-(4) (2003). This type of sanction is consistent with the intent of the statute, which incentivizes settlements in compensation cases. See Hise , 2003-NMCA-015, ¶ 9, 133 N.M. 133, 61 P.3d 842. We review for abuse of discretion the factual findings underlying the judge's compensation order that determined whether to impose statutory fee-shifting. See Abeyta , 2005-NMCA-087, ¶¶ 9, 20, 137 N.M. 800, 115 P.3d 816 (noting that "an abuse of discretion can include a discretionary decision that is premised on a misapplication of the law"). If the findings meet the requirements of Section 52-1-54(F) (2003), then fee-shifting is mandatory. See id. ¶¶ 19-20. In Abeyta , there was a close factual question regarding whether the amount the worker proposed in the offer of judgment was less than the amount awarded in the final compensation order-a prerequisite to fee-shifting. Id. ¶ 20. The workers' compensation judge in Abeyta used sound discretion to determine that factual question in the worker's favor. Id. ¶¶ 14-16. It was not an abuse of discretion for the workers' compensation judge to find that the amount awarded in the compensation order exceeded the amount proposed in the offer of judgment. Id. ¶¶ 14-15.
{31} After rejecting Worker's offer of judgment, Employer incurred additional liability for costs not included in the offer of judgment. Comparing findings and conclusions from the December 21, 2016, compensation order to portions of the November 20, 2015, offer of judgment provides a basis for the workers' compensation judge to find that Worker's benefits received through the compensation order exceeded those he would have obtained under the offer of judgment. Such a finding is a prerequisite to fee-shifting.
{32} The workers' compensation judge erroneously declined to apply the fee-shifting statute because the judge concluded that Worker's offer of judgment "failed to address material facts and issues in dispute." But as we explained in the previous section, an offer of judgment need not establish the date of MMI or amount of PPD benefits if the healing process is still underway. We conclude that the workers' compensation judge erred as a matter of law by declining to apply the fee-shifting provision, Section 52-1-54(F)(4) (2003), where Worker's offer of judgment met all of the requirements to trigger fee-shifting under the statute. We therefore hold that the workers' compensation judge erred by failing to award Worker 100% of his attorney fees.
IV. CONCLUSION
{33} We reverse and remand to the Workers' Compensation Administration for further proceedings consistent with this opinion.
{34} IT IS SO ORDERED.
WE CONCUR:
PETRA JIMENEZ MAES, Justice
CHARLES W. DANIELS, Justice
BARBARA J. VIGIL, Justice

Although Worker failed to include the offer of judgment in the record before this Court, Employer does not dispute that Worker's brief in chief accurately sets forth the terms of the offer.