This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**KELLY COWAN,**

     Worker-Appellant,

v.                                          **NO. 30,555**

**UNIVERSITY OF NEW MEXICO and**
**RISK MANAGEMENT,**

     Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Juanita Roibal-Bradley, Workers' Compensation Judge**

LeeAnn Ortiz
Albuquerque, NM

for Appellant

French & Associates, P.C.
Katherine E. Tourek
Albuquerque, NM

for Appellees

**DECISION**

**GARCIA, Judge.**

Appellant Kelly Cowan (Worker) appeals the Workers' Compensation Administration's denial of workers' compensation benefits for an injury allegedly sustained while Worker was employed by the University of New Mexico (UNM). Worker argues two issues on appeal: (1) the workers' compensation judge (WCJ) erred in concluding that Worker had settled her workers' compensation claim by entering into an agreement and release with UNM related to her Equal Employment Opportunity Commission (EEOC) claim; and (2) the WCJ erred in concluding that Worker's injury was either a new injury or an aggravation of the injury she sustained while working for UNM. We affirm the WCJ's decision denying worker's compensation benefits based upon its determination that Worker's injury was either a new injury or an aggravation of the injury that Worker sustained while working for UNM. Because we affirm on this ground, we do not reach the issue of whether Worker settled her workers' compensation claim by entering into an agreement and release with UNM.

**FACTUAL BACKGROUND**

Worker was hired by UNM in October 2006 as a telephone triage nurse. Worker's duties involved answering telephone calls from clients using a phone headset, soliciting information regarding their symptoms, entering demographics into the computer system, selecting positive indicators in the computer system, and

providing nursing assessments.

On October 10, 2007, Worker reported an injury to UNM involving pain in her right hand, wrist, forearm, and elbow while typing and doing other computer-related work. It is undisputed that UNM directed Worker to seek treatment with Dr. Phillip Wagner and that Dr. Wagner diagnosed Worker with tendinitis that was causally related to her work for UNM. Employee was placed on work restrictions on October 11, 2007, and Dr. Wagner reported that Worker's injuries gradually improved over time. On November 13, 2007, Dr. Wagner referred Worker to Dr. Barrie Ross, who diagnosed Worker with tendinitis and carpal tunnel syndrome, which Dr. Ross opined were both directly and causally related to the work-related injury on October 10, 2007. On April 2, 2008, Dr. Ross reported that Worker's symptoms were improving and recommended an orthopedic consultation regarding Worker's right wrist pain.

On April 1, 2008, Employee acquired a second job as a part-time nurse for Su Vida Services, Inc. (Su Vida). Worker's duties included providing nursing support, performing assessments, and developing healthcare plans. Worker testified that she worked up to twenty hours per week and that the job involved minimal computer-related work.

As a result of Dr. Ross's referral for an orthopedic consultation, Worker was treated by Dr. Donald Vichick from April 23, 2008 through April 15, 2009. It is

3

undisputed that Dr. Vichick diagnosed Worker with extensor tenomyalgia/tendinosis (tennis elbow) of the right elbow and forearm and causally related those injuries to her work at UNM. Dr. Vichick also diagnosed Worker with mild carpal tunnel syndrome, but opined that the carpal tunnel syndrome was not work-related. Dr. Vichick testified that on June 18, 2008, Worker's right elbow was pain-free most of the time, her shoulder was asymptomatic, numbness and tingling had disappeared, a test for thoracic outlet syndrome was negative, and Worker had full painless motion of her wrists.

UNM did not continue Worker's term of employment that ended on June 30, 2008. Employee subsequently filed an EEOC claim against UNM, and the parties ultimately entered into an agreement and release of "any and all claims" arising out of her employment with UNM on October 24, 2008.

In addition to her continuing employment with Su Vida, Worker obtained employment with FoneMed North America, Inc. (FoneMed) on June 24, 2008, and worked her first independent shift on August 8, 2008. Worker testified that she works twenty hours per week as a telephone triage nurse and that her job description at FoneMed is similar to her prior job description with UNM. Worker further testified that her job at FoneMed involves less computer work than her job with UNM because the software is more efficient and data entry is minimal.

Dr. Vichick testified that on August 7, 2008, Worker reported that "[a]fter using a touch pad mouse for two weeks at her computer, . . . she developed increased pain in the extensor muscles of the forearm, but it settled down somewhat when she changed computer activity." Dr. Vichick further testified that Worker reported that "her right elbow was okay at rest and with light activity but was painful, again, with strenuous activity, such as stirring while cooking, doing her hair, or prolonged use on the computer if she didn't take a break." Similarly, Dr. Vichick testified that on October 1, 2008, Worker continued to improve but had forearm and elbow pain when "[w]orking more than five hours with her keyboard or too many days per week." Worker had full painless range of motion of the right elbow, right forearm, and right wrist, and she was released to regular work duty with no restrictions at that time. On February 18, 2009, Worker reported that she was really busy at work, but that all of her symptoms were improving and that she only experienced pain when participating in certain strenuous activities that were not work-related.

Dr. Vichick testified that on April 15, 2009, Worker had reached maximum medical improvement (MMI) based upon a reasonable medical probability. Dr. Vichick further testified that Worker's forearm, wrist, and elbow injuries had resolved based upon a reasonable medical probability and that she reported no problems doing her work. When Dr. Vichick last treated Worker on April 15, 2009, he did not feel

that Worker needed steroid injections, surgery, platelet-rich plasma injections, or any future medical treatment based upon a reasonable medical probability. He further testified that had a functional capacity evaluation been performed at that time, Worker would likely have had a zero impairment rating based upon a reasonable medical probability.

On October 14, 2009, Worker sought treatment from Dr. Miguel Pupiales for pain in her right arm, forearm, and wrist. On that date, Worker "state[d] that the pain continued to progress a[s] time went on, in particular since she had [to] switch to her new job and that her new job required her to use the computer keyboard much more frequently than her previous job." Dr. Pupiales testified that he did not know to which job Worker was referring, but that Worker told him that the repetitive motions of her new job were causing the increase in symptoms. After listening to excerpts from Worker's deposition in December 2009 regarding her later increase in symptoms, Dr. Vichick testified that based upon a reasonable medical probability, this increase in symptoms was an aggravation of her previous problems.

**PROCEDURAL HISTORY**

On May 28, 2009, Worker filed a workers' compensation claim against UNM, requesting temporary total disability, permanent partial disability, and attorney fees. A mediation conference was held on September 22, 2009, but the parties were unable

6

to reach a settlement.

On April 15, 2010, the parties entered a pre-trial order and stipulated that Worker suffered a compensable injury to her right elbow as a result of a work-related accident on October 10, 2007. However, the parties disagreed regarding whether Worker continued to suffer from this injury or whether Worker's claims for tendinitis of the right wrist, carpal tunnel syndrome, tennis elbow, and pronator syndrome were related to the work-related accident on October 10, 2007. Additionally, the parties disagreed regarding whether Worker was entitled to disability benefits, future medical benefits, or repayment of mileage to and from medical appointments. The parties stipulated that UNM had paid past medical bills for Worker's treatment with Dr. Wagner, Dr. Ross, Dr. Vichick, her initial visit with Dr. Pupiales, and for physical therapy. UNM had not paid for subsequent visits to Dr. Pupiales.

Trial occurred on April 20, 2010, and both parties subsequently submitted proposed findings of fact and conclusions of law. On June 24, 2010, the WCJ entered an order denying Worker's claim for workers' compensation benefits. The WCJ's decision was based upon two alternative grounds: (1) Worker settled her workers' compensation claim by entering into an agreement and release with UNM; and (2) even if Worker did not settle her claim, medical evidence established that Worker's injuries were not related to her employment with UNM but were instead a new injury

7

or aggravation. Worker filed a timely appeal.

**DISCUSSION**

Worker argues that the WCJ erred in denying her claim for workers' compensation benefits based upon the determination that Worker's injury was either a new injury or an aggravation of the injury she incurred while working for UNM.

"We review workers' compensation orders using the whole record standard of review." *Leonard v. Payday Prof'l*, 2007-NMCA-128, ¶ 10, 142 N.M. 605, 168 P.3d 177. Under the whole record standard, "we must consider all evidence bearing on the findings, favorable or unfavorable, to determine if there is substantial evidence to support the result." *Tom Growney Equip. Co. v. Jouett*, 2005-NMSC-015, ¶ 13, 137 N.M. 497, 113 P.3d 320 (internal quotation marks and citation omitted). "Where the testimony is conflicting, the issue on appeal is not whether there is evidence to support a contrary result, but rather whether the evidence supports the findings of the trier of fact." *Id.* (internal quotation marks and citation omitted). "We may not substitute [our] judgment for that of the administrative agency, and we view all evidence, favorable and unfavorable, . . . in the light most favorable to the agency's decision." *Leonard*, 2007-NMCA-128, ¶ 10 (alteration in original) (internal quotation marks and citation omitted). "We will affirm the agency's decision if, after taking the entire

record into consideration, there is evidence for a reasonable mind to accept as adequate to support the conclusion reached." *Id.* (internal quotation marks and citation omitted).

"[T]he employer at the time of the disability is responsible for compensation for preexisting non-disabling injuries aggravated by subsequent work activities." *Jouett*, 2005-NMSC-015, ¶ 20. Moreover, the date of the disability arising from an accident, rather than the date of the accident itself, is the determinative date for establishing liability. *Salinas-Kendrick v. Mario Esparza Law Office*, 118 N.M. 164, 165-66, 879 P.2d 796, 797-98 (Ct. App. 1994). Consequently, "[w]hen a disability develops gradually, or when it [occurs] as the result of a succession of accidents, the insurance carrier covering the risk at the time of the most recent injury or exposure bearing a causal relation to the disability is usually liable for the entire compensation." *Jouett*, 2005-NMSC-015, ¶ 24 (internal quotation marks and citation omitted).

In *Jouett*, the worker sustained a work-related injury to his shoulder while employed by Growney Equipment, and Growney Equipment paid for medical treatment but provided no disability benefits since the worker was not disabled at that time. *Id.* ¶ 3. The worker aggravated his initial injury while working for two subsequent employers and ultimately became disabled while working for Big Dog. *Id.* ¶ 23. Although the Court recognized that the worker continued to experience pain

between his initial injury and when he became disabled, the Court determined that Big Dog was potentially liable for the full compensation award because Big Dog was the worker's employer at the time of the aggravation of his injury resulting in disability. *Id.* ¶¶ 3-7, 29. The Court further determined that Growney Equipment satisfied its obligation to worker by providing medical treatment since the worker was not disabled at that time. *Id.* ¶ 23.

Relying upon the reasoning in *Jouett*, we conclude that substantial evidence supports the WCJ's decision denying Worker's claim against UNM based upon its determination that Worker aggravated her initial injury through her subsequent employment with Su Vida and/or FoneMed. It is undisputed that Worker sustained a work-related accident at UNM on October 10, 2007, and that UNM paid for Worker's medical treatment until after Dr. Vichick determined that Worker had reached MMI. The record also supports the WCJ's determination that Worker had fully recovered from the accident by April 15, 2009, since Dr. Vichick testified that Worker's injuries had resolved, Worker had reached MMI, and Worker would have had a zero impairment rating at that time, based upon a reasonable medical probability. Additionally, Dr. Vichick did not anticipate that Worker would need any further medical treatment when he last treated her on April 15, 2009. Consequently, the record supports the WCJ's determination that Worker had reached MMI on April

10

15, 2009, and that Worker had no disability resulting from her work-related injury on October 10, 2007.

Substantial evidence also supports the WCJ's determination that Worker's injury was aggravated by her subsequent employment with Su Vida and/or FoneMed. Worker began working as a part-time nurse for Su Vida in 2008, where she performed minimal computer work. Additionally, Worker acquired a second job as a part-time telephone triage nurse with FoneMed on June 24, 2008, performing computer-related tasks that were similar to those performed in her previous employment at UNM. On August 7, 2008, Worker reported to Dr. Vichick that she developed increased pain "[a]fter using a touch pad mouse for two weeks at her computer." Similarly on October 1, 2008, Worker reported that she experienced pain when "[w]orking more than five hours with her keyboard or too many days per week." Finally, on October 14, 2009, when Worker sought additional treatment from Dr. Pupiales after initially reaching MMI, Worker "state[d] that the pain continued to progress a[s] time went on, in particular since she had [to] switch to her new job and that her new job required her to use the computer keyboard much more frequently than her previous job." Dr. Pupiales testified that Worker told him that the repetitive motions of her "new job" were causing the increase in symptoms. Furthermore, after Dr. Vichick heard testimony regarding Worker's increase in symptoms following her initial release from

treatment, Dr. Vichick testified that based upon a reasonable medical probability, this increase in symptoms was an aggravation of her previous problems. Worker argues that the "new job" causing the increased symptoms was UNM rather than FoneMed. Substantial evidence, however, supports the WCJ's determination that the "new job" was FoneMed since at the time the statements regarding the "new job" were made in the medical records, Worker was no longer working for UNM and had recently started a new job working with FoneMed. Consequently, substantial evidence supports the WCJ's determination that Worker's increased symptoms and alleged disability resulted from an aggravation of her prior injury through her new employment with FoneMed and/or Su Vida.

Worker argues that there is no evidence of any new injury or aggravation because she did not sustain a new injury and no new accident was reported to her subsequent employers. However, "our precedent does not require a discrete 'accident,' in the traditional sense, if employment activity itself aggravates a preexisting injury and results in disability." *Jouett*, 2005-NMSC-015, ¶ 27. If "the stress of labor aggravates or accelerates the development of a preexisting infirmity causing an internal breakdown of that part of the structure, a personal injury by accident does occur." *Id.* ¶ 28 (internal quotation marks and citation omitted). "Under these circumstances, where a work-related accidental injury is aggravated by

continued employment activities but the worker continues normal employment under pain resulting in later disability, . . . the time and place of the 'accident,' for purposes of 'definiteness and certainty' . . . is the [later] date the worker became disabled." *Id.* (citation omitted). Consequently, despite recurring symptoms , substantial evidence supports the WCJ's determination that Worker's continuation of normal employment activities at FoneMed and/or Su Vida caused an aggravation of her original work-related injury despite the lack of a discrete new accident being reported by Worker.

We affirm the WCJ's denial of Worker's claim against UNM for additional workers' compensation benefits. Similar to *Jouett*, where the employer at the time of the original work-related accident was not liable for a disability that resulted from an aggravation of that injury while working for a subsequent employer, we conclude that UNM is not liable for Worker's claim arising from an aggravation of the accident first reported at UNM. *Id.* ¶ 29.

**CONCLUSION**

For the foregoing reasons, we affirm the WCJ's decision denying Worker's claim for further worker's compensation benefits from UNM.

**IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**MICHAEL E. VIGIL, Judge**