This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40188**

**CARL A. LUCERO,**

Worker-Appellant,

v.

**STATE OF NEW MEXICO and
NEW MEXICO RISK MANAGEMENT,**

Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION
Leonard J. Padilla, Hearing Officer**

Gerald A. Hanrahan
Albuquerque

for Appellant

Miller Stratvert, P. A.
Max A. Jones
Riley L. Norris
Albuquerque, NM

for Appellees

### MEMORANDUM OPINION

**YOHALEM, Judge.**

**{1}** The opinion filed on January 3, 2024, is hereby withdrawn, and this opinion is substituted in its place, following Respondent-Appellant's timely motion for rehearing, which this Court has denied. Carl A. Lucero (Worker) appeals two orders—a compensation order and an order on motion for reconsideration—entered by a Workers' Compensation Judge (WCJ) resolving contested issues and awarding Worker workers' compensation benefits for impairments arising from a 2018 work-related injury. Worker

argues that the compensation order is void because it was entered over thirty days after his formal hearing in violation of NMSA 1978, Section 52-5-7(B) (1993). Alternatively, Worker challenges: (1) the Whole Person Impairment (WPI) rating found by the WCJ; (2) the WCJ's findings concerning Worker's residual physical capacity; (3) the WCJ's decision that Worker made the initial selection of a health care provider (HCP); (4) the WCJ's denial of benefits for what Worker claims are scheduled injuries to his knees and ankles; and (5) the WCJ's denial of reimbursement for medical cannabis. Not persuaded that the WCJ erred, we affirm.

**BACKGROUND**

{2}     On June 3, 2018, Worker was a highway maintenance supervisor employed by the State of New Mexico Department of Transportation (Employer). Worker was standing on the shoulder of I-25 in Valencia County, New Mexico, directing traffic, when he was struck by a vehicle. Worker was thrown approximately forty feet by the force of the impact. He landed on the highway, injuring his head, brain, spine, hips, knees, and ankles. Worker was transported to Presbyterian Hospital (Presbyterian) in Albuquerque, where he received emergency care. Worker was then referred to Concentra Medical Center (Concentra), for follow-up care. Employer provided Worker total temporary disability (TTD) benefits for almost seven months following his injuries.

{3}     On March 29, 2019, Worker filed a workers' compensation complaint, seeking additional workers' compensation benefits and claiming, among other things, that Employer had made the initial selection of HCP and that Worker was entitled to scheduled injury (SI) benefits for injuries to his knees and ankles.

{4}     Following the filing of the complaint, Worker continued to be treated by medical providers, in relevant part, Spine Solutions, who prepared a functional capacity evaluation (FCE) of Worker; and Anthony P. Reeve, MD, who assigned Worker a 20 percent impairment rating, and later changed that to a 26 percent impairment rating. Dr. Reeve provided testimony in two depositions regarding both of these ratings.

{5}     The WCJ held a formal hearing on the complaint on March 3, 2021. The compensation order was not entered until November 10, 2021, 252 days after the hearing.

{6}     In the compensation order, the WCJ found, in relevant part: (1) Worker's WPI rating is 20 percent; (2) Worker has light residual physical capacity; (3) Employer timely notified Worker that it was allowing Worker to make the first selection of HCP; (4) Worker is not entitled to SI benefits for his knees and ankles; and (5) Worker is not entitled to reimbursement for medical cannabis. Worker filed a motion asking the WCJ to reconsider these findings on December 9, 2021. Although granting some of Worker's requests, the WCJ denied the motion to reconsider as to the five issues raised on appeal.

**DISCUSSION**

## I. Worker Failed to Preserve His Argument That the Compensation Order Is Void

**{7}**     Worker first contends that the compensation order entered in this case is void because it was entered over thirty days after his formal hearing, in violation of what Worker claims is a mandatory deadline set by Section 52-5-7(B). Worker acknowledges that he failed to raise this issue before the WCJ. He argues that this Court should nonetheless entertain this argument because he had no opportunity to raise the issue below.

**{8}**     Although a lack of opportunity to raise an issue in the lower tribunal is an exception to the preservation rule, *see* Rule 12-321(A) NMRA, we do not agree that Worker was denied the opportunity to raise this issue during the proceedings below. Worker could have objected to the delay by filing a motion at any time after the thirty-day period expired. He could have also included a challenge to the validity of the order in his motion to reconsider, or raised it at the hearing on that motion. Thus, Worker failed to make a timely objection regarding this issue, and the WCJ did not have an opportunity to rule on the objection. *See Murken v. Deutsche Morgan Grenfell, Inc.*, 2006-NMCA-080, ¶ 10, 140 N.M. 68, 139 P.3d 864 (requiring parties to "make a timely objection that specifically apprises the [lower tribunal] of the nature of the claimed error and invokes an intelligent ruling thereon" in order to preserve an issue for appeal (internal quotation marks and citation omitted)). "Issues not properly raised [in the lower tribunal] and on which a ruling by the [lower tribunal] was not properly invoked will not be considered on appeal." *In re Last Will & Testament of Skarda*, 1975-NMSC-031, ¶ 30, 88 N.M. 130, 537 P.2d 1392. We, therefore, do not address this issue.

## II. The WCJ's Findings Are Supported by Substantial Evidence and Are Consistent With the Workers' Compensation Act

### A. Standard of Review

**{9}**     We review the findings of fact in workers' compensation orders using the whole record standard of review. *Leonard v. Payday Pro.*, 2007-NMCA-128, ¶ 10, 142 N.M. 605, 168 P.3d 177. We will not disturb the WCJ's findings of fact if they are supported by substantial evidence in the administrative record. *See id.* Substantial evidence is evidence that a "reasonable mind [would] accept as adequate to support the conclusion reached." *Id.* In determining whether substantial evidence exists, we review the entire record, *see id.*, "view[ing] the evidence in the light most favorable" to the WCJ's decision, without "total disregard [for] contravening evidence." *DeWitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 12, 146 N.M. 453, 212 P.3d 341 (internal quotation marks and citation omitted). We will defer to the WCJ's credibility determinations, *see Gallegos v. City of Albuquerque*, 1993-NMCA-050, ¶ 11, 115 N.M. 461, 853 P.2d 163, so long as they are supported by "evidence demonstrating the reasonableness of [the] agency's decision." *DeWitt*, 2009-NMSC-032, ¶ 12. In sum, "we will not disturb the WCJ's findings unless they are manifestly wrong or clearly opposed to the evidence." *Maez v. Riley Indus.*, 2015-NMCA-049, ¶ 10, 347 P.3d 732. Although we review the findings of fact of

the WCJ, deferring to the WCJ's credibility determinations, and drawing inferences in favor of the findings, we review the WCJ's application of the law to the facts de novo. *Romero v. Laidlaw Transit Servs., Inc.*, 2015-NMCA-107, ¶ 8, 357 P.3d 463.

**{10}** We now turn to Worker's contentions.

## B. Worker's Impairment Rating

**{11}** Worker first challenges the WCJ's finding that Worker's WPI rating is 20 percent. Specifically, Worker argues that the WCJ erred when he relied on Dr. Reeve's first assessment of Worker at 20 percent WPI rather than relying on Dr. Reeve's second impairment assessment of 26 percent WPI. The difference in the impairment ratings was largely due to changes Dr. Reeve made in how he applied the American Medical Association's Guides (AMA Guides) in evaluating Worker's headaches, post-traumatic stress disorder (PTSD), and the injuries to Worker's lumbar and cervical spine.

**{12}** Worker is thus challenging the WCJ's decision to rely on the first assessment of Worker's level of impairment performed by Dr. Reeve, rather than the second assessment Dr. Reeve performed at the request of Worker's counsel. Worker also argues for a higher impairment rating than the 26 percent assigned by Dr. Reeve in his second assessment, claiming that Dr. Reeve misapplied the AMA Guides even in his second assessment.

**{13}** Worker does not claim that there is expert testimony in the record as to Worker's level of impairment other than the testimony of Dr. Reeve. As the finder of fact, the WCJ was, therefore, required to evaluate Dr. Reeve's conflicting assessments and his testimony about each and determine where the truth lies. *See Romero v. H. A. Lott, Inc.*, 1962-NMSC-037, ¶ 11, 70 N.M. 40, 369 P.2d 777 ("Mere inconsistencies or perhaps contradictions in the testimony of a witness only affect his credibility and it is the duty of the trier of the facts to weigh the evidence, determine the credibility of the witness and the weight to be given the testimony, and, where the truth lies."); *see also Madrid v. St. Joseph Hosp.*, 1996-NMSC-064, ¶ 20, 122 N.M. 524, 928 P.2d 250 ("Where evidence is conflicting, the ultimate decision concerning the degree of a worker's impairment and disability rests with the [WCJ].").

**{14}** "[T]his Court cannot judge the credibility of witnesses, reweigh the evidence, or make its own finding of fact." *Gallegos*, 1993-NMCA-050, ¶ 11. We will defer to the WCJ's credibility determinations and to the WCJ's ultimate findings of fact based on those credibility determinations so long as they are supported by evidence demonstrating the reasonableness of an agency's decision. *See DeWitt*, 2009-NMSC-032, ¶ 12 (holding that "[s]ubstantial evidence on the record as a whole is evidence demonstrating the reasonableness of an agency's decision, . . . and we neither reweigh the evidence nor replace the fact[-]finder's conclusions with our own."). The WCJ found that Dr. Reeve's second impairment rating lacks credibility based on the following considerations: (1) Dr. Reeve admitted he did not perform a second clinical evaluation of Worker and did not prepare a clinical analysis to lay the foundation for his new

4

impairment rating, as required by the AMA Guides; (2) Dr. Reeve admitted that he was doing everything in his power to see that Worker received full disability benefits when he gave Worker a new and higher impairment rating in the second assessment; (3) Dr. Reeve admitted in his second deposition that he continued to view his testimony in his first deposition as reliable; (4) Dr. Reeve testified that his second impairment rating used an alternative method that he was not familiar with from his training, and reported that the alternative method was suggested by Worker's counsel; (5) Worker's counsel requested that he look at the lumbar spine impairment based on disc protrusion and radiculopathy in reassessing Worker; (6) Dr. Reeve included impairment based on disc protrusion and radiculopathy in his second assessment, when he had not included it in his first assessment, based on counsel's representation that these injuries were documented on an MRI, even though Dr. Reeve did not have and had not reviewed any MRI or EMG report; and (7) Dr. Reeve added cervical spine impairment in the second assessment even though Worker had not reported cervical pain until after the request for a second assessment.

**{15}** Worker does not claim that any of the WCJ's stated reasons for relying on Dr. Reeve's first assessment are not supported by the evidence in the record or are not reasonable. Worker's counsel, instead, argues that Dr. Reeve failed to correctly apply the AMA Guides in performing the first assessment, and that he corrected the errors he made in the second assessment. Worker's argument ignores the limits on our review. Our review is limited to deciding whether it was reasonable for the WCJ to determine that Dr. Reeve's second assessment was not credible. We find the WCJ's stated reasons for finding the results of the second assessment not credible eminently reasonable. We note as well that there is no evidence in the record—only the argument of counsel—supporting the requested 40 percent impairment rating, a rating even higher than Dr. Reeve's second rating of 26 percent. Under our standard of review, we must affirm the WCJ's finding that Worker's impairment rating is the 20 percent assigned by Dr. Reeve in his first assessment.

## C.    Worker's Residual Physical Capacity

**{16}** Worker next argues that the WCJ erred in finding that Worker's residual physical capacity is light rather than sedentary. Worker contends that the WCJ should have relied on a disability assessment of Worker prepared by Dr. Reeve, which found Worker incapable of performing any work. Importantly, this assessment was prepared by Dr. Reeve to support Worker's application for Public Employee Retirement Act (PERA) benefits as an employee of the State of New Mexico. It was not an assessment performed for the Workers' Compensation Administration. Worker argues that Dr. Reeve's evaluation for disability retirement benefits was "[t]he only current opinion" about Worker's residual physical capacity and, therefore, should have been relied on by the WCJ in place of the earlier FCE prepared by Spine Solutions. We disagree and explain.

**{17}** Spine Solutions, an entity whose qualifications to evaluate residual physical capacity are not challenged by Worker, completed the FCE in August 2019. Spine

5

Solutions concluded that Worker "demonstrated the physical capability to lift up to 40 [pounds] from floor to waist occasionally and up to 20 [pounds] from floor to waist frequently." Worker acknowledges that the Spine Solutions' FCE results indicated that Worker's residual physical capacity was light.

**{18}** In January 2020, Worker was continuing to have difficulty performing his job duties. It is uncontested that Worker informed Dr. Reeve that he had decided to stop working and would apply for disability retirement benefits at the end of the fiscal year. The standard for disability retirement benefits under PERA, according to Dr. Reeve, was the incapacity to perform any work. On January 22, 2020, Dr. Reeve completed the PERA application, noting on the form that Worker was incapable of performing any work.

**{19}** Dr. Reeve testified in his second deposition, in relevant part, that he did not list Worker as capable of performing even light duty work on the PERA application because if he had, Worker would have not received any disability benefits, and he wanted to help Worker obtain the benefits he felt Worker was entitled to receive. The evidence relied on by the WCJ also included another disability assessment by Dr. Reeve, completed the same day as the PERA application, which reported that Worker was capable of performing regular duty work.

**{20}** Given this evidence, we do not find the WCJ's finding that Worker could perform light duty work, a finding consistent with the Spine Solutions' FCE, unreasonable. The WCJ supported his reliance on Spine Solutions' evaluation by noting that Dr. Reeve's various assessments were inconsistent and lacked credibility based on Dr. Reeve's admission that he wanted to help Worker obtain benefits.

**D.    Health Care Provider Selection**

**{21}** Worker next contends that the WCJ erred by finding that Employer timely notified Worker that it was allowing him to make the first selection of HCP. Specifically, Worker claims that Employer had already selected Concentra as the first HCP prior to notifying Worker that he could make the initial selection of HCP. Worker claims that the late notification was ineffective. We conclude that the WCJ's decision that Worker was timely notified and made the first choice of HCP is supported both by substantial evidence in the record and by the applicable precedent governing the timeliness of the original notice to a worker about the choice of an HCP. *See* NMSA 1978, § 52-1-49(B) (1990).

**{22}** We first address the dispute of fact relevant to this issue. On the date of Worker's injuries, Worker received emergency care at Presbyterian Hospital. When Worker was released from the hospital, Presbyterian instructed Worker in his discharge documents to arrange for follow-up care at Concentra, an occupational medicine provider. Worker attended his first appointment at Concentra on June 5, 2018. Worker argues that Employer chose Concentra as the first HCP for three reasons: (1) Concentra was a provider generally preferred by Employer; (2) a nurse associated with Employer was

6

present with Worker during treatment and assisted Worker in managing his care; and (3) Employer authorized the follow-up care appointment. The WCJ, however, found based on Presbyterian's discharge summary that "Worker was informed by Presbyterian to contact Concentra to arrange follow-up care," and that, therefore, Worker selected Concentra and not Employer. We conclude that there was a factual dispute supported by evidence on both sides regarding who made the referral to Concentra. We will not disturb the finding of the WCJ where the evidence is disputed.

{23}   The WCJ's decision is also supported by the relevant law. Although an employer is required to communicate their decision about who will choose the initial HCP in writing, *see Howell v. Marto Elec.*, 2006-NMCA-154, ¶ 15, 140 N.M. 737, 148 P.3d 823, within a reasonable amount of time, *id.* ¶ 18, or be presumed to have made the initial selection, the communication may occur after a worker has already received medical treatment. *Id.* ¶ 15. We see no error in the WCJ's conclusion that notice on June 5, 2018, merely two days after the injury, was timely, even if Worker had already received medical care from Concentra when notice was given. We construe *Howell* to have permitted Worker to select an HCP other than Concentra after that initial appointment. It is undisputed that Worker continued to receive care at Concentra, thus selecting Concentra as the initial healthcare provider after receipt of notice. We, therefore, find no error in the WCJ's decision that Worker made the initial choice of HCP after timely notice of Employer's decision to allow him to select the initial provider.

### E.   Scheduled Injury Benefits

{24}   Worker next contends that he was improperly denied SI benefits, NMSA 1978, pursuant to Section 52-1-43 (2003), for injuries to his knees and ankles. Worker first claims that the parties stipulated in the pretrial order that Worker had suffered injury to his knees and ankle and that there was some loss of use. According to Worker, the sole question for hearing was the percentage of Worker's partial loss of use of his knees and ankles, not whether Worker was entitled to *any* SI benefits for injury to his knees and ankles. Worker next argues that Worker presented substantial evidence showing the loss of use of his knees and ankles and the WCJ erred in denying all SI benefits for those injuries. We address each argument in turn.

{25}   We do not agree that the pretrial order precluded a finding based on the evidence that there was no loss of use of Worker's knees and ankles attributable to his injuries from the June 3, 2018, accident, at the time of maximum medical improvement. The parties agreed in the pretrial order that Worker suffered an injury to his knees and ankles. They disagreed as to whether, and if so, to what extent, there was a partial loss of use of those body members.[1] Worker, therefore, was on notice that the extent of the loss of use of his knees and ankles was a disputed issue. That issue was fully litigated at the formal hearing, with both parties presenting evidence. Employer did not contend that there had been no injury to Worker's ankles and knees, consistent with the stipulation in the pretrial order. Both parties focused solely on the question of partial loss

---

[1]The pretrial order states that the parties' dispute "[t]he extent of Worker's entitlement to scheduled injury (SI) benefits pursuant to Section 52-1-43 due to the partial loss of use of his knees and ankles."

of use. We do not read the pretrial order to prevent Employer from introducing evidence that the injuries had fully resolved and there was no loss of use at the time of maximum medical improvement.

**{26}** Worker next claims that he presented sufficient evidence to demonstrate a partial loss of use of his knees and ankles. The question for this Court on appeal is not whether there is evidence that could have supported a different result, but whether there is substantial evidence to support the result reached. Applying the correct standard of review, we conclude that the WCJ's finding of no loss of use is supported by substantial evidence in the record. The WCJ relied on Dr. Reeve's testimony that at the time of maximum medical improvement, Worker's complaints about his ankles and knees had resolved. Dr. Reeve also testified that he was not aware of any impairment of Worker's activities of daily living due to the injuries to his knees and ankles. This evidence is sufficient to meet the requirement for substantial evidence in the record to support the WCJ's finding of no loss of use. The WCJ was not required to credit Worker's contrary testimony, particularly in light of Employer's impeachment of Worker's testimony denying prior impairment of his knees and ankles.

**{27}** Finally, to the extent Worker contends that he was entitled to SI benefits based on the preexisting condition of his knees and ankles, the law is clear that preexisting conditions are included in the measure of loss of use of a body member only when there is an additional loss of use caused by a work-related accident. *See Jojola v. Fresenius Med. Clinic*, 2010-NMCA-101, ¶ 5, 149 N.M. 51, 243 P.3d 755 (holding that where there was no evidence that a preexisting impairment to a scheduled member became worse as a result of the work-related accident, no SI benefits were due). Where, as here, there is no loss of use due to the June 2018 accident, the WCJ did not err in denying all SI benefits for Worker's fully resolved knee and ankle injuries.

## F.      Reimbursement for Medical Cannabis Expenses

**{28}** Last, Worker challenges the WCJ's determination that Worker was not entitled to reimbursement for medical cannabis expenses in this case. Under our Workers' Compensation Act, a Worker may be reimbursed for medical cannabis expenses when reasonable and necessary. *See* § 52-1-49(A). Regulations adopted by the Workers' Compensation Administration further provide that medical cannabis expenses are "reasonable and necessary medical treatment only where an authorized health care provider certifies that other treatment methods have failed." 11.4.7.9(E)(1)(b) NMAC.

**{29}** Here, the WCJ found that "Worker did not present evidence from Dr. Reeve or [any] other HCP that Worker's regimen of medication and treatment had failed, and that medical cannabis was therefore warranted." On appeal, Worker does not argue that the terms of the regulation were satisfied. Worker instead challenges the regulation as "unreasonable and illogical" and claims that its requirement that other treatment must have failed before treatment with cannabis will be "reasonable and necessary" is inconsistent with Section 52-1-49's requirement for reasonable and necessary medical treatment. We do not agree that the regulation is either inherently "unreasonable and

illogical" or that a regulation determining what treatment with cannabis is "reasonable and necessary" conflicts with Section 52-1-49. Because Worker fails to make a developed argument on either of these points and fails as well to cite any legal authority addressing the scope of the Workers' Compensation Administration's authority to determine by regulation whether a mode of treatment is "reasonable and necessary," we decline to consider Worker's challenge to the WCJ's reliance on this regulation further. *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal.").

**CONCLUSION**

**{30}**　We affirm the compensation order and the order denying in part, and granting in part, Worker's motion to reconsider the compensation order entered in this matter.

**{31}　IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**GERALD E. BACA, Judge**